WILLIAM A. GRAY

*v.*

JOHN SCHOFIELD *et al.*

*Opinion filed October 24, 1898.*

1. HOMESTEAD—*homestead right was merely an exemption prior to the act of 1873.* Prior to the act creating a homestead estate, in force July 1, 1873, the homestead right was merely an exemption, and upon the owner's conveyance without relinquishing the homestead right the operation of the deed as to such exemption was stayed until the same was relinquished or lost, when it became operative and transferred the homestead right to the grantee.

2. SAME—*act of 1873 creates an estate of homestead to the value of $1000.* The act in force July 1, 1873, creates an estate of homestead to the value of $1000, and where the property does not exceed $1000 in value the homestead estate embraces the entire title and interest of the householder, leaving no separate interest.

3. SAME—*a deed not joined in by wife does not convey homestead.* A deed to property embracing the homestead, which is not joined in by the wife, leaves the homestead estate in the grantor precisely as though the deed had not been executed, and such estate may be transferred by sufficient conveyance or it may descend to the heirs.

4. SAME—*abandonment of homestead not pursuant to deed does not pass homestead estate to grantee.* The title to a homestead estate remaining in the grantor because of the insufficiency of the deed will pass to the grantee if possession thereof is abandoned by the grantor pursuant to the deed, but the mere abandonment thereof by the grantor not pursuant to the deed, although it extinguishes the grantor's homestead estate, does not pass title to the grantee.

5. SAME—*lien of judgment attaches upon abandonment of homestead.*
The abandonment of a homestead estate remaining in the grantor
owing to the insufficiency of his deed, which abandonment is not in
pursuance of the deed, leaves the premises subject to the lien of a
previous judgment against the grantor upon which an execution
has been returned *nulla bona,* and such lien is not affected by the
grantor's mortgage of the premises made after abandonment.

APPEAL from the Circuit Court of Peoria county; the
Hon. N. E. WORTHINGTON, Judge, presiding.

WILLIAM S. KELLOGG, for appellant.

ISAAC C. EDWARDS, H. C. FULLER, and WILLIAM M.
MAXWELL, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the
court:

Appellant filed his amended bill in the circuit court
of Peoria county, against appellees, for partition of cer-
tain real estate and an accounting for rents of the same.
Demurrers to this bill were sustained and it was dismissed
at appellant's cost.

The following facts were alleged in the amended bill
as grounds of the relief prayed for, and were admitted
by the demurrers: On July 11, 1881, John Schofield was
the owner in fee of lot 12 and seventeen feet of even
width off the northeasterly side of lot 11, in block 23, in
the original town (now city) of Peoria, in Peoria county,
with a frontage on Adams street of eighty-nine feet and
extending back one hundred and seventy-one feet on
Eaton street to an alley, and occupied the same, with his
wife, Marion Schofield, as his homestead. On that day
he executed a quit-claim deed of all his interest in said
real estate to John S. Lee for the expressed consideration
of $100, and Lee on the same day executed a quit-claim
deed expressing a like consideration, conveying all inter-
est in said real estate to the wife, Marion Schofield. Both
deeds were recorded in the office of the recorder of Peoria

county on the day of their execution. John Schofield continued to occupy the premises with his wife as a homestead. On October 3, 1888, said Marion Schofield, with her husband, John Schofield, for the expressed consideration of $10,000, conveyed to James Bennett all of said premises except a strip fronting on Eaton street, near the middle part of the tract, thirty-seven feet wide, and running back with the same width eighty-nine feet across the premises, upon which was the dwelling house occupied by said John Schofield as his homestead, which was retained. On November 1, 1888, A. R. Warren recovered two judgments before a justice of the peace of Peoria county against John Schofield, for $200 each and costs, upon which executions were issued and returned "no property found." Transcripts of said judgments were filed in the office of the clerk of the circuit court of said county and recorded there. On September 21, 1889, executions were issued on said judgments out of the circuit court to the sheriff of said county, and were returned December 21, 1889, "no property found." On November 10, 1890, said A. R. Warren recovered another judgment in the circuit court of Peoria county against John Schofield and others for $1160 and costs. John Schofield continued to occupy the thirty-seven foot strip on which was the dwelling house, with his wife, as a homestead, until November 1, 1892, when they abandoned the same and the possession thereof and established their residence elsewhere. On September 27, 1893, Marion Schofield and John Schofield executed a mortgage to the Anthony Loan and Trust Company on the premises to secure their note for $1500. Afterward, on March 23, 1895, executions were issued on all said judgments and levied on the interest of John Schofield in the said thirty-seven foot strip, and on May 9, 1895, the premises were sold by virtue of one of said executions to William S. Kellogg for $1000. Kellogg assigned the certificate of purchase to complainant, and on November 19, 1896, a sheriff's deed was executed

to complainant and duly recorded. The premises were rented to Frank McLaughlin by John Schofield and Marion Schofield, or one of them, for $50 per month, which they received and refused to account for any part thereof to complainant.

The bill made John Schofield, Marion Schofield, Frank McLaughlin and the Anthony Loan and Trust Company defendants. The prayer for partition was, that the estate of complainant in the premises claimed by the bill, of the value of $1000, should be set off to him, or if a partition should be impracticable, the premises should be sold and he should receive the value of his said estate of $1000. Complainant also asked that the mortgage to the Anthony Loan and Trust Company should be decreed not a lien upon his interest, and that an accounting for the rents of the premises should be taken.

It is stated in the brief for all the appellees (including the unknown heirs of Marion Schofield, now deceased, who have been made parties,) except the Anthony Loan and Trust Company, as follows: "The only point in this case is, did John Schofield have any interest in the property in question, at the time of the levy and sale under the executions, that could be reached by an execution?" On behalf of the Anthony Loan and Trust Company, under the title of a brief, a number of questions are propounded, but we understand that the above is the only proposition involved.

At the time of the conveyance by John Schofield to Lee and by Lee to Marion Schofield, the said John Schofield had an estate of homestead in fee to the extent and value of $1000 in the premises attempted to be conveyed. The rights of the parties and the power to convey this estate were subject to the provisions of the act exempting the homestead, in force July 1, 1873, by which an estate of homestead was created. Under the previous statute there was no estate of homestead, but simply an exemption, and if the owner of the premises conveyed

them without relinquishing the exemption, the title was transferred subject only to the exemption. The operation of the deed, as against the homestead right, was stayed until the exemption was relinquished or lost, when it became effective. By the statute of 1873, creating the homestead estate, a different rule was established, and a conveyance insufficient to transfer the homestead estate transfers nothing unless it may operate upon some excess above that estate the title of which remains in the grantor. This estate is measured by its value, and not by an aliquot part or specific share of the title. It is an estate of $1000 in value, and by the statute is exempt from the laws of conveyance, except as therein provided. Where the property does not exceed in value $1000 the homestead estate embraces the entire title and interest of the householder, leaving no separate interest. In case he owns anything beyond the homestead estate, it may be conveyed by him the same as any other property in which there is no homestead. (*Eldridge* v. *Pierce*, 90 Ill. 474.) The homestead in this case was an estate in fee in John Schofield, and a conveyance which was not sufficient to pass that estate could operate only on the excess in value above $1000. (*Browning* v. *Harris*, 99 Ill. 456.) Marion Schofield did not join in the conveyance made by her husband, John Schofield, to Lee, and consequently the deed was ineffectual to pass the title to the homestead. (*Kitterlin* v. *Milwaukee Mechanics' Mutual Ins. Co.* 134 Ill. 647; *McMahill* v. *McMahill*, 105 id. 596.) If the property attempted to be conveyed was worth more than $1000 the conveyance would have no effect upon the estate of homestead, but would transfer the excess and become operative only as to the remaining interest above that estate. The deed from John Schofield did not affect his title in fee to the extent and value of $1000, but as to that estate was a nullity and the title remained in him. (*Barrows* v. *Barrows*, 138 Ill. 649.) A deed embracing the homestead, which is inoperative to convey that estate,

leaves it in the grantor unaffected by the deed, and the estate is to be treated precisely as though the deed had never been executed. It may be transferred ·by a sufficient conveyance or the title will descend to the heirs-at-law. (*Anderson* v. *Smith*, 159 Ill. 93.) The title may pass if the possession is abandoned or given pursuant to the conveyance, but a voluntary abandonment not pursuant to a conveyance does not pass the title, although it extinguishes the homestead right, leaving the property to be thereafter dealt with as other property. (*Eldridge* v. *Pierce, supra.*) Abandonment, merely, does not have the effect of vesting the estate in the grantee of an insufficient deed, and in this case there was no abandonment or surrender of possession pursuant to the conveyance of the property by John Schofield. The parties continued to occupy the premises together, and the final abandonment was by both when they secured another homestead, and not in pursuance of the conveyance. When the premises were abandoned the exemption of the premises as a homestead ceased, but the extinguishment of the homestead did not operate to transfer the title. The estate was exempt from the judgments and the laws of conveyance upon a condition which then ceased to exist, but that fact could not operate to carry the title to some one else from John Schofield, where it remained precisely as though the deed had never been made. '

We conclude that John Schofield had title to the property in question to the extent and value of $1000, subject to levy and sale under the executions. The mortgage to the loan and trust company was made after the estate had ceased to be a homestead, when the premises were subject to the prior liens of the judgments, and its rights, if any, as against complainant, were cut off as to that estate by the sale of the property and the sheriff's deed.

The decree is reversed and the cause is remanded.

*Reversed and remanded.*